**In re CARPETMAKERS WAREHOUSE, LTD., d/b/a Homemakers Furniture and Carpet, Debtor(s).**

**Bankruptcy No. 85–01131–BKC–TCB.**

United States Bankruptcy Court, S.D. Florida.

Oct. 11, 1985.

Andrew J. Nierenberg, Miami, Fla., for debtor.

## ORDER DENYING APPROVAL OF GRA AGREEMENT

THOMAS C. BRITTON, Bankruptcy Judge.

This chapter 11 debtor has requested approval upon the basis of shortened and restricted notice of a proposed Agreement with GRA, a Connecticut partnership. The matter was called for hearing on September 23, but debtor's counsel had to leave the courtroom for a conflicting appointment before the matter was heard. He therefore requested that it be reset. The matter was rescheduled and reheard on October 7.

This case was filed four-and-one-half months ago by a limited partnership in the retail furniture and carpet business. Giving credence to the facts recited by the debtor and GRA, the debtor's inventory has a wholesale value of $350,000. It proposes to sell this inventory in bulk to GRA for 66% of its wholesale value ($233,333). Most of the purchase price (85%) will be paid directly by GRA to (a) a bank which has a first lien on all assets ($150,000); (b) an additional retainer to the debtor's attorney ($20,000); and (c) a deposit to the local newspaper ($30,000) to cover the cost of advertising a 30-day bankruptcy liquidation sale to be followed by a 60-day going-out-of-business sale.

In return, GRA obtains a first lien for all it pays on all the debtor's assets except equipment, together with all its overhead expenses, an 8% commission on all sales, and an additional 5% commission to all salesmen employed by GRA.

The net effect of this agreement would be to leave the remaining creditors nothing or next to nothing. The apparent surplus available to the debtor from the sale in the amount of $33,333, if not entirely consumed by GRA's overhead expenses and commissions, must be divided between the debtor and GRA as joint venturers. The other creditors are federal, state and local taxing authorities ($180,000), customers who have paid deposits which have been spent by the debtor ($150,000), and unsecured trade creditors ($500,000).

GRA was introduced to this debtor by the debtor's attorney who will receive $20,000. The principal beneficiaries of this scheme are GRA and the debtor's attorney. The secured bank gains nothing it is not assured in any event. The taxing authorities, who have a priority claim, are represented by overworked and underpaid representatives who, if aware at all of this transaction, may lack the sophistication to even appreciate what is going on. The customers will be left with empty promises from a debtor who has already betrayed their trust. The trade creditors have little or no chance of recovering anything from this bankrupt under any circumstances.

This liquidation could be and should be performed by a disinterested panel trustee whose compensation is regulated by statute and would be a fraction of the sum demanded by GRA.

I have left to the last this court's concern for the integrity of the liquidation sales conducted under the name of this court. In doing so, I do not intend to subordinate this concern to the concern expressed above for the creditors in this case. I believe that if this agreement were approved, GRA would conduct a heavily advertised sale for 90 days which would consist to a large extent of inventory not presently owned by the debtor, but brought in specially for the sale. The sale would appear to be a bankruptcy liquidation sale conducted by a trustee. Such a sale would be a fraud on the public and would tend to undermine the confidence of this community in this court, its trustees and the liquidation sales conducted by those trustees. For this additional reason, therefore, this proposed agreement is disapproved.

The debtor's attorney is directed to send a copy of this order to all scheduled creditors forthwith.